N3UCwalP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              20 Cr. 497 (GHW)

DANIEL WALCHLI,

             Defendant.

------------------------------x

                         New York, N.Y.
                         March 30, 2023
                         12:30 p.m.

Before:

               HON. GREGORY H. WOODS,

                        District Judge

              APPEARANCES

DAMIAN WILLIAMS,
    United States Attorney for the
    Southern District of New York
BY:  OLGA I. ZVEROVICH
    Assistant United States Attorney

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC
    Attorneys for Defendant
BY:  JEREMY H. TEMKIN
    DR. ANDREAS LÄNZLINGER
    DANIEL P. GORDON
    JOSHUA P. BUSSEN

ALSO PRESENT:
ZACHARY KATZ, IRS CI Special Agent
MAGNA CZAGANY, Swiss Interpreter

1          (Case called)

2          MS. ZVEROVICH:  Good morning, your Honor.  Olga

3    Zverovich and Christopher Magnani for the United States, and

4    we're joined by IRS CI Special Agent Zachary Katz.

5          THE COURT:  Thank you very much.  Good afternoon.

6          MR. TEMKIN:  Good afternoon, your Honor.  Jeremy

7    Temkin, Morvillo Abramowitz Grand Iason & Anello for

8    Mr. Walchli.  With me is Mr. Walchli, Andreas Länzlinger, who

9    is Mr. Walchli's Swiss counsel, Dan Gordon from my firm, and

10   Joshua Bussen from my firm.  Also with us today is

11   Mr. Walchli's wife, who has accompanied him to court today.

12         THE COURT:  Very good.  Thank you very much.

13         Just a brief note, we've requested the services of an

14   interpreter here today.  I've waited a few moments to take the

15   bench because she's not yet arrived.  My inclination is to give

16   her more time to arrive rather than beginning without her.

17         Let me hear from counsel for defendant.

18         Counsel, is your client able to fully — that is

19   100 percent — understand the proceedings in English?  If not,

20   that's not a problem, of course.  We have an interpreter, who I

21   hope is on the way.

22         MR. TEMKIN:  Your Honor, so we've obviously prepared

23   for today's proceedings.  I'm confident that Mr. Walchli is

24   100 percent able to understand the proceedings, the dialogue

25   and the exchange with your Honor.  Mr. Länzlinger, who has been

1    involved in the representation for several years, also is here

2    and speaks Swiss German if there is any sort of nuance that we

3    think may be problematic.  But I am very confident that

4    Mr. Walchli understands the proceedings and will understand the

5    colloquy with your Honor.

6                  THE COURT:  Thank you.

7                  The last caveat gives me some concern.  As you know,

8    not everybody that speaks another language is qualified to

9    serve as an interpreter here, so I don't take great comfort

10   from the presence of and potential need for communications from

11   counsel who's not a qualified interpreter.

12                  Let me hear more from you on that point, counsel.

13                  MR. TEMKIN:  Your Honor, I have represented

14   Mr. Walchli for almost 10 years now.  I have absolutely no

15   doubt that he -- I do not speak Swiss German.  I've had

16   countless conversations with Mr. Walchli in English, again,

17   preparing through yesterday when we prepared for the colloquy

18   today.

19                  Mr. Länzlinger is of the Bär & Karrer firm in Zürich.

20   He has worked on many, many cross border, transnational

21   matters, and is fully familiar with the U.S. justice system.  I

22   understand there's a difference between being able to speak --

23                  THE COURT:  Thank you.

24                  So let me do this.  I've just been informed that the

25   interpreter is on her way up.  I've been informed that the

N3UCwalP

interpreter is here and, indeed, I can see her.  What I'm going

propose to do is take a brief pause to let her be prepared to

interpret these proceedings.  I'm going to engage in a brief

colloquy with her before we begin.

MR. TEMKIN:  Your Honor, I do believe that having

Mr. Walchli wear the headphones would be actually more of a

distraction and would cause more problems than the benefit that

could be gained from it.  Again, having spent many, many hours

speaking English with him, I do believe that this is not an

issue, but I do think that having sort of hearing the

proceedings in German and speaking English in response is just

going to make it more confusing as opposed to less.

THE COURT:  Thank you.

So let's do this, I'm going to engage in a brief

colloquy with the interpreter.  I understand the proffer by

defendant is that the defendant is 100 percent able to

understand the English language, that he is 100 percent able to

understand even complex issues involving legal and

constitutional matters communicated in the English language,

and that the defendant is raising no concerns regarding the

prospect of conducting this plea colloquy in English instead,

as counsel has just made plain on the record, they wish to

proceed in English, notwithstanding any potential concerns.

Given those proffers by counsel for the defendant that he is

fully capable of understanding the proceedings in English and

N3UCwalP

```
 1    they are indeed asking for us not to use the services of the
 2    interpreter during the course of today's proceeding, I'm happy
 3    to proceed in that way.  However, in order to ensure we have
 4    what I'll describe as a backstop in the event there is any
 5    issue that may arise, completely unanticipated by the defense
 6    with Mr. Walchli's ability to understand anything here, I'm
 7    still going to engage in a colloquy with our interpreter to
 8    qualify her to interpret any portion of the proceedings that
 9    need to take place here today.
10            Miss, can I ask you to please stand.  Can you please
11    state your name.
12            MR. TEMKIN:  Your Honor.
13            THE COURT:  Yes.
14            MR. TEMKIN:  I want to be crystal clear --
15            THE COURT:  Let me be crystal clear.  I'm not going to
16    have her use the microphone or the earphones.  Thank you.
17            What's the issue?
18            MR. TEMKIN:  Your Honor said that you asked about his
19    ability to speak and understand English and then said that he
20    has the ability to understand complex legal concepts and
21    constitutional concepts.  I want to be candid with your Honor
22    that when we were here for oral argument, which addressed
23    complex legal issues, some of that was outside of Mr. Walchli's
24    understanding as we're sitting there having the argument.  He
25    understands the colloquy, he understands what is happening
```

N3UCwalP

1    today.  Again --

2              THE COURT:  I'm sorry.  Let me be very clear.  We have

3    an interpreter here, you know the nature of the issues that

4    we're going to be discussing.  Either I hear from you that he

5    is 100 percent capable of understanding everything that will be

6    said here, which involve all of the issues that you know will

7    be discussed, or you're telling me that he cannot.

8              MR. TEMKIN:  I'm telling you that he can understand

9    the issues that are going to be discussed today.

10             THE COURT:  Thank you.

11             And I understand, counsel, that the defense waives any

12   argument or contention that Mr. Walchli was unable to

13   understand any portion of the colloquy that's conducted today

14   on the basis of your proffer; is that right?

15             MR. TEMKIN:  Yes, your Honor.

16             THE COURT:  Thank you.

17             So you just explained a brief caveat.  I was not

18   asking whether or not Mr. Walchli was a lawyer and whether or

19   not he understood the constitution, but whether or not he would

20   be able to understand the English conversation today which

21   involves issues of constitutional import.

22             Do you have any caveats that you'd like to offer as to

23   his ability to understand and communicate about the issues that

24   will be discussed during today's proceeding?

25             MR. TEMKIN:  None whatsoever.

N3UCwalP

```
 1              THE COURT:  Thank you.  Good.

 2              So, miss, can I ask you to please state your name for

 3    the record?

 4              THE INTERPRETER:  Magna Czagany.

 5              THE COURT:  Can you please tell me what your native

 6    language?

 7              THE INTERPRETER:  My mother talks German.  I lived for

 8    15 years in Sweden, and my father was Hungarian and I went to

 9    school.

10              THE COURT:  Thank you.

11              How did you learn English?

12              THE INTERPRETER:  In Sweden, it's the first foreign

13    language you learn.

14              THE COURT:  Thank you.

15              How long have you been speaking English?

16              THE INTERPRETER:  Almost 60 years.

17              THE COURT:  Thank you.

18              Can you please describe your formal education in

19    English.

20              THE INTERPRETER:  Well, I finished high school in

21    Sweden, then I went to interpreter school in Vienna, and one of

22    the languages I studied is English.  And when I came to

23    New York, I studied at Colombia in their American-English

24    language program.  And then I've been working as an interpreter

25    for the last 30 years.
```

N3UCwalP

1          THE COURT:  Thank you very much.

2          Have you ever undergone any formal training in

3     simultaneous or consecutive interpreting?

4          THE INTERPRETER:  Well, the interpreter school in

5     Vienna taught that, as well.

6          THE COURT:  Thank you.

7          Have you passed any qualifying or certifying

8     interpreting or translation exams?

9          THE INTERPRETER:  Not really, no.

10         THE COURT:  Thank you.

11         What interpreting credentials, if any, do you have?

12         THE INTERPRETER:  My 30 years of experience.

13         THE COURT:  Thank you.

14         Do you have any certifications or other official

15     credentials?

16         THE INTERPRETER:  No.

17         THE COURT:  Thank you.

18         Have you ever interpreted in any court proceeding?

19         THE INTERPRETER:  Yes.

20         THE COURT:  Thank you.

21         How many?

22         THE INTERPRETER:  Many.  Many.  Many.

23         THE COURT:  Thank you.

24         In state or federal court?

25         THE INTERPRETER:  Mostly in federal court, but in the

N3UCwalP

| | |
|---|---|
| 1 | past, also in state court. |
| 2 | THE COURT:  Very good. |
| 3 | So can I ask you to please raise your right hand. |
| 4 | Do you solemnly swear to interpret these proceedings |
| 5 | truly, fairly, and impartially to the best of your ability so |
| 6 | help you God? |
| 7 | THE INTERPRETER:  Yes, I will. |
| 8 | THE COURT:  Very good.  Thank you very much. |
| 9 | So let's begin.  The interpreter is qualified to |
| 10 | provide interpretation services for this proceeding.  If, as is |
| 11 | unexpected here, Mr. Walchli has any difficulty understanding |
| 12 | anything that's said during the course of this proceeding, we |
| 13 | have an interpreter here available, and the defense, |
| 14 | notwithstanding your prior representations to the Court, should |
| 15 | feel absolutely no hesitation in letting me know that the |
| 16 | services of an interpreter are or would be helpful, the |
| 17 | interpreter is here to ensure that that resource is available. |
| 18 | So again, feel no hesitation in asking if it would be helpful |
| 19 | for me to make that resource available to you.  That is why she |
| 20 | is here and she will be available throughout the course of |
| 21 | today's proceeding. |
| 22 | Mr. Walchli, I've been informed that you wish to plead |
| 23 | guilty to Count One of the indictment that's numbered |
| 24 | 20 Cr. 497; is that correct? |
| 25 | THE DEFENDANT:  Yes, your Honor, that's correct. |

N3UCwalP

1          THE COURT:  Mr. Walchli, before I accept your guilty

2     plea, I'm going to ask you certain questions so I can establish

3     to my satisfaction that you wish to plead guilty because you

4     are, in fact, guilty and not for some other reason, and also to

5     ensure that you know what rights you'll be giving up if you

6     choose to proceed and enter a guilty plea in this matter.

7          If you don't understand any of my questions or if

8     you'd like to confer with your attorney at any time throughout

9     the course of today's proceeding, please don't hesitate to let

10    me know, I'd be happy to give you as much time as you like to

11    confer with your counsel.  If any of my questions aren't clear,

12    I'd be happy to clarify them for you.

13         THE DEFENDANT:  Thank you, your Honor.

14         THE COURT:  My pleasure.

15         So first, Mr. Walchli, because I'm going to be asking

16    you a number of questions, can I ask you to please stand to

17    take an oath to answer my questions truthfully.

18         (Defendant sworn)

19         THE COURT:  Mr. Walchli, You are now under oath, which

20    means if you answer any of my questions falsely, you can be

21    prosecuted for the separate crime of perjury for making false

22    statements.  The government would have the right to use any

23    statements that you make under oath against you in such a

24    prosecution.

25         Do you understand that?

N3UCwalP

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  Thank you.

3           So first, what's your full name?

4           THE DEFENDANT:  My name is Daniel Walchli,

5    W-a-l-c-h-l-i.

6           THE COURT:  Thank you, Mr. Walchli.

7           Mr. Walchli, how old are you?

8           THE DEFENDANT:  I'm 55 and becoming 56 on the 6th of

9    May this year.

10           THE COURT:  Thank you.

11           Where were you born?

12           THE DEFENDANT:  I was born in Adliswil, Switzerland.

13    That's a little town in the canton of Zürich.

14           THE COURT:   Thank you.

15           How far did you go in school?

16           THE DEFENDANT:  I finished university in Switzerland.

17    I did a -- you would call it a master's degree in economics,

18    and I did an executive MBA, not far from here, the University

19    of Rochester in Upstate New York.

20           THE COURT:  Thank you.

21           Can you describe for me please, briefly, your

22    employment experience.

23           THE DEFENDANT:  Yes.  Since from 1994 until 2004, I

24    worked in a bank in Zürich called Zürich Kantonalbank there

25    in -- controlling accounting department, business development,

N3UCwalP

```
 1    restructuring.  I worked one year in London 2002 to 2003.  And
 2    from 2004 until 2021, I was working for IHAG Holding there
 3    mainly developed companies, helping them to grow, helping them
 4    to flourish, also how to develop new markets, particularly in
 5    Asia, but mainly company work, development of companies, make
 6    it bigger, more successful.
 7              THE COURT:  Thank you.
 8              Mr. Walchli, have you ever been treated or
 9    hospitalized for any mental illness?
10              THE DEFENDANT:  No, I haven't, your Honor.
11              THE COURT:  Are you currently or have you recently
12    been under the care of a physician, psychiatrist, or
13    psychologist?
14              THE DEFENDANT:  No, I haven't, your Honor.
15              THE COURT:  Are you currently or have you recently
16    been hospitalized or treated for drug addiction?
17              THE DEFENDANT:  No, your Honor, I haven't.
18              THE COURT:  Thank you.
19              Within the past 24 hours, have you used or taken any
20    alcohol, drugs, or medication?
21              THE DEFENDANT:  No, I haven't.
22              THE COURT:  Is your mind clear today?
23              THE DEFENDANT:  Yes, your Honor.
24              THE COURT:  Do you understand what's happening in
25    today's proceeding?
```

N3UCwalP

1          THE DEFENDANT:  Yes, your Honor, I do.

2          THE COURT:  Thank you.

3          Mr. Walchli, have you received a copy of the

4     indictment that's pending against you?

5          THE DEFENDANT:  Yes, your Honor, I have.

6          THE COURT:  Have you had enough of a chance to discuss

7     with your lawyers the case in general and, in particular, the

8     charge to which you intend to plead guilty and any possible

9     defenses to that charge?

10          THE DEFENDANT:  Yes, I have, your Honor.

11          THE COURT:  Thank you.  Has your lawyer explained to

12     you the consequences of entering a plea of guilty?

13          THE DEFENDANT:  Yes, your Honor, they have.

14          THE COURT:  And are you fully satisfied with your

15     lawyer's representation of you?

16          THE DEFENDANT:  Yes, I am, your Honor.

17          THE COURT:  Counsel for defendant, let me turn to you.

18          Counsel, have you discussed this matter with your

19     client?

20          MR. TEMKIN:  Yes, your Honor.

21          THE COURT:  Thank you.

22          Is he capable of understanding the nature of these

23     proceedings?

24          And you should stand as you're addressing the Court,

25     counsel, please.

N3UCwalP

1        MR. TEMKIN:  Sorry, your Honor.

2        THE COURT:  Thank you.

3        MR. TEMKIN:  Yes.

4        THE COURT:  Thank you.  Good.

5        Counsel, do any of you have any doubt as to the

6    defendant's competence to plead at this time?

7        MR. TEMKIN:  No, your Honor.

8        MS. ZVEROVICH:  No, your Honor.

9        THE COURT:  Thank you.

10       On the basis of Mr. Walchli's responses to my

11   questions, my observations of his demeanor here in court, and

12   the representations of counsel, I find that the defendant is

13   competent to enter a plea of guilty at this time.

14       Mr. Walchli, before we turn to your plea, I'm going to

15   explain a number of constitutional rights that you have.  I'm

16   doing this because these are rights that you'll be giving up if

17   you choose to proceed and enter a guilty plea in this matter.

18   So please listen carefully to what I'm about to say, and if you

19   don't understand something, please stop me, and your lawyer or

20   I will be happy to explain the matter more fully.

21       So first, Mr. Walchli, you have the right to plead not

22   guilty to the charge against you contained in the indictment.

23       Do you understand that?

24       THE DEFENDANT:  Yes, your Honor, I do.

25       THE COURT:  If you did plead not guilty, you'd be

N3UCwalP

1  entitled to a speedy and a public trial by a jury on the charge

2  against you contained in this indictment.

3          Do you understand that?

4          THE DEFENDANT:  Yes, your Honor, I do.

5          THE COURT:  At a trial, you'd be presumed to be

6  innocent and the government would be required to prove you

7  guilty by competent evidence beyond a reasonable doubt before

8  you could be found guilty.

9          Do you understand that?

10         THE DEFENDANT:  Yes, I do, your Honor.

11         THE COURT:  Thank you.

12         A jury of 12 people would have to agree unanimously

13  that you were guilty and you would not have to prove that you

14  were innocent if you were to go to trial.

15         Do you understand that?

16         THE DEFENDANT:  Yes, your Honor, I do.

17         THE COURT:  At trial and at every stage of your case,

18  you would be entitled to be represented by a lawyer.  If you

19  could not afford a lawyer, one would be appointed for you at

20  public expense — that is free of cost.

21         Do you understand that?

22         THE DEFENDANT:  Yes, your Honor, I do.

23         THE COURT:  During a trial.  The witnesses for

24  government would have to come to court and testify in your

25  presence and your lawyer could cross examine the government's

N3UCwalP

| | |
|---|---|
| 1 | witnesses and object to evidence offered by the government. |
| 2 | Do you understand that? |
| 3 | THE DEFENDANT: Yes, your Honor, I do. |
| 4 | THE COURT: At trial, you would also have the |
| 5 | opportunity to offer evidence on your own behalf if you wished |
| 6 | to do so, and you would have the right to compel witnesses to |
| 7 | come to court to testify in your defense. |
| 8 | Do you understand that? |
| 9 | THE DEFENDANT: Yes, your Honor, I do. |
| 10 | THE COURT: At a trial, you would have the right to |
| 11 | testify if you chose to do so, but you would also have the |
| 12 | right not to testify, and if you decided not to testify, no |
| 13 | one, including the jury, could draw any suggestion or inference |
| 14 | of guilt from the fact that you did not testify. |
| 15 | Do you understand that? |
| 16 | THE DEFENDANT: Yes, your Honor, I do. |
| 17 | THE COURT: Do you understand that by pleading guilty, |
| 18 | you're giving up your right to seek suppression — that's |
| 19 | exclusion from a trial — of any evidence against you that the |
| 20 | government may have obtained improperly? |
| 21 | THE DEFENDANT: Yes, your Honor, I do understand that |
| 22 | point. |
| 23 | THE COURT: If you're convicted at a trial, |
| 24 | Mr. Walchli, you would have the right to appeal that verdict. |
| 25 | Do you understand that? |

N3UCwalP

1      THE DEFENDANT:  Yes, your Honor, I do.

2      THE COURT:  And even now as you're preparing to enter

3   this plea, you have the right to change your mind and plead not

4   guilty and to go to trial on any charges against you contained

5   in the indictment.

6      Do you understand that?

7      THE DEFENDANT:  Yes, your Honor, I do.

8      THE COURT:  Thank you.

9      Now, Mr. Walchli, if you plead guilty, you will also

10   have to give up your right not to incriminate yourself.  I say

11   that because I expect that later in today's proceeding, I will

12   ask you questions about what you did in order to satisfy myself

13   that you are guilty as charged and you will have to admit and

14   acknowledge your guilt.

15      Do you understand that?

16      THE DEFENDANT:  Yes, your Honor, I do.

17      THE COURT:  Thank you.

18      Now, Mr. Walchli, if you plead guilty and if I accept

19   your plea, you'll give up your right to a trial and the other

20   rights that I've just discussed with you, other than your right

21   to a lawyer, which you have regardless of whether or not you

22   plead guilty, but there will be no trial and I will enter a

23   judgment of guilty and a sentence on the basis of your plea.

24   There will be no appeal with respect to whether the government

25   could use the evidence that it has against you or with respect

N3UCwalP

1    to whether you did or did not commit this crime.

2                Do you understand that?

3                THE DEFENDANT:  Yes, your Honor, I do.

4                THE COURT:  So Mr. Walchli, I've just reviewed a

5    number of important rights that you have.

6                Do you understand each and every one of those rights?

7                THE DEFENDANT:  Yes, your Honor, I do.

8                THE COURT:  Thank you.

9                And are you willing to give up your right to a trial

10   and the other rights that I've just discussed with you?

11               THE DEFENDANT:  Yes, your Honor, I will.

12               THE COURT:  Thank you.

13               So, Mr. Walchli, I've asked you about the indictment.

14   Have you received a copy of the indictment containing the

15   charge against you?

16               THE DEFENDANT:  Yes, your Honor, I have.

17               THE COURT:  Thank you.

18               Have you read it?

19               THE DEFENDANT:  Yes, your Honor, I have.

20               THE COURT:  Thank you.

21               Do you understand that Count One of the indictment

22   charges that from at least in or about 2008 through at least in

23   or about 2014, you, together with others known and unknown,

24   conspired to defraud the United States, in violation of Title

25   18, United States Code, Section 371?

1              Do you understand that that's the nature of the charge

2     against you?

3              THE DEFENDANT:  Quickly, could I discuss with my

4     lawyers?

5              THE COURT:  Yes.  Please take your time.

6              (Defendant and counsel conferred)

7              THE DEFENDANT:  Yes, your Honor, I understand that.

8              THE COURT:  Thank you.

9              So counsel for the United States, I'd like to ask you

10    to please state the elements of that offense.

11             MS. ZVEROVICH:  Thank you, your Honor.

12             The elements of the conspiracy to defraud the United

13    States as charged in Count One are the following:

14             First, that at some point between in or about 2008 and

15    in or about November 2014, there was an agreement or

16    understanding between two or more persons to defraud the United

17    States — that is to impede, impair, obstruct or defeat the

18    lawful functions of the Internal Revenue Service by fraud,

19    deceit, or other dishonest means;

20             Second, that at some point during the conspiracy the

21    defendant, Mr. Walchli, unlawfully, willfully, and knowingly

22    became a member of the conspiracy — that is he knowingly joined

23    and purposely participated in the conspiracy; and

24             Third, that at some point during the conspiracy, any

25    one of the members of the conspiracy knowingly committed or

N3UCwalP

1    caused to be committed at least one overt act in furtherance of

2    the conspiracy.

3            The government would be required to prove each of

4    these elements at trial beyond a reasonable doubt.

5            In addition, the government would be required to prove

6    by a preponderance of the evidence that venue in the Southern

7    District of New York is proper.

8            THE COURT:  Thank you.

9            So let me turn back to you, Mr. Walchli.

10           Mr. Walchli, do you understand that if you were to go

11   to trial for this offense, that the government would have to

12   prove all of the substantive elements of this offense beyond a

13   reasonable doubt?

14           THE DEFENDANT:  Yes, your Honor, I understand that.

15           THE COURT:  Thank you.

16           Do you understand that the government would be

17   required to prove that venue was appropriate here in the

18   Southern District of New York, which includes, among other

19   places, Manhattan, by a preponderance of the evidence?

20           THE DEFENDANT:  Yes, your Honor, I understand.

21           THE COURT:  Now, Mr. Walchli, I'm going to tell you

22   the maximum possible penalty for this crime.  The maximum means

23   the most that could possibly be imposed, it doesn't mean that

24   it's what you'll necessarily receive.  But you have to

25   understand that by pleading guilty, you're exposing yourself to

N3UCwalP

1    the possibility of receiving any combination of punishments up

2    to the maximum that I'm about to describe.

3             Do you understand that?

4             THE DEFENDANT:  Yes, your Honor, I understand that.

5             THE COURT:  Thank you.

6             So first, I'm going to tell you about the possible

7    restrictions on your liberty.  The maximum term of imprisonment

8    for this crime is 5 years, which could be followed by up to

9    3 years of supervised release.  If you are sentenced to a term

10   of supervised release, you will be subject to supervision by

11   the probation office, there will be rules of supervised release

12   that you'll have to follow, and if you violate those rules, you

13   could be returned to prison without a jury trial to serve

14   additional time with no credit for any time that you served in

15   prison as a result of your sentence and no credit for any time

16   spent on post-release supervision.

17            You should also understand that there is no parole in

18   the federal system and that if you are sentenced to prison in

19   this case, you'll not be released early on parole.

20            Do you understand that?

21            THE DEFENDANT:  I understand that, your Honor.

22            THE COURT:  Thank you.

23            Second, Mr. Walchli, in addition to these restrictions

24   on your liberty, the maximum possible punishment also includes

25   certain financial penalties.  The maximum allowable fine is

N3UCwalP

```
1    $250,000 or twice the gross monetary gain derived from the
2    offense or twice the gross monetary loss to persons other than
3    yourself, whichever of those things is greater.  In addition, I
4    can order restitution to any person or entity injured as a
5    result of your criminal conduct.  I can also order you to
6    forfeit any property derived from the offense or used to
7    facilitate the offense.  Finally, I must also order a mandatory
8    special assessment of $100.
9            So counsel, before I proceed, do any of you wish to
10   correct or amend any of the penalties that I've just described?
11           Counsel for the United States.
12           MS. ZVEROVICH:  No, your Honor.
13           THE COURT:  Thank you.
14           Counsel.
15           MR. TEMKIN:  No, your Honor.
16           THE COURT:  Thank you.
17           Mr. Walchli, do you understand that these are the
18   maximum possible penalties?
19           THE DEFENDANT:  Yes, your Honor, I do understand.
20           THE COURT:  Thank you.
21           Mr. Walchli, are you a United States citizen?
22           THE DEFENDANT:  No, I'm not.  I'm a Swiss citizen.
23           THE COURT:  Thank you.
24           Let me just ask a few questions that relate to your
25   immigration status.
```

1          Do you understand, Mr. Walchli, that as a result of

2   your guilty plea, you may be removed from the United States,

3   denied citizenship, and denied admission to the United States

4   in the future?

5          THE DEFENDANT:  Yes, your Honor, I understand that.

6          THE COURT:  Thank you.

7          Do you understand that your removal from the United

8   States could be mandatory?

9          THE DEFENDANT:  Yes, your Honor, I do understand that.

10         THE COURT:  Did you discuss the possible immigration

11  consequences of your plea with your counsel?

12         THE DEFENDANT:  Yes, your Honor, I did.

13         THE COURT:  Do you understand that in the event that

14  your conviction results in adverse effects on your immigration

15  status, you'll still be bound by your guilty plea and that you

16  will not be allowed to withdraw your plea, regardless of any

17  advice that you may have received from your counsel or any

18  others regarding the immigration consequences of your plea?

19         THE DEFENDANT:  I understand that point, your Honor.

20         THE COURT:  Thank you.

21         Mr. Walchli, do you understand that as a result of

22  your guilty plea, you may lose certain valuable civil rights,

23  to the extent that you have them or might otherwise obtain them

24  now, such as the right to vote in the United States, the right

25  to hold public office, the right to serve on a jury, and the

N3UCwalP

1    right to possess any kind of firearm?

2            THE DEFENDANT:  Yes, I understand that, your Honor.

3            THE COURT:  Mr. Walchli, are you serving any other

4    sentence, either state or federal?

5            THE DEFENDANT:  No, I don't.

6            THE COURT:  To your knowledge, are you being

7    prosecuted in state court for any crime?

8            THE DEFENDANT:  No, I haven't.

9            THE COURT:  Thank you.

10           Mr. Walchli, do you understand that if your lawyer or

11    anyone else has attempted to predict what your sentence will

12    be, that their prediction could be wrong?

13           THE DEFENDANT:  Yes, I have been informed about that

14    point.

15           THE COURT:  Thank you.

16           Do you understand that the sentence ultimately imposed

17    may be different from any estimate that your attorneys may have

18    given you?

19           THE DEFENDANT:  Yes, I have been informed about that

20    point by my attorneys, yes.

21           THE COURT:  Thank you.

22           That's good, because no one, not your lawyer, not the

23    government's lawyer, really no one can give you any assurance

24    of what your sentence is going to be.  That's because I'm going

25    to impose your sentence and I'm not going to do that now.

N3UCwalP

1          Do you understand that?

2          THE DEFENDANT:  I understand that, your Honor.

3          THE COURT:  Thank you.

4          Mr. Walchli, before I impose your sentence, I'll

5     review a presentence report that's prepared by the probation

6     department in this court.  You and the government will have the

7     opportunity to challenge the facts that are reported in the

8     presentence report and also the application of the advisory

9     sentencing guidelines that are recommended by the probation

10    officer.  I'm obliged to do my own independent calculation of

11    the advisory sentencing guidelines range that applies in your

12    case.  After your initial advisory guidelines range has been

13    determined, I have the authority in some circumstances to

14    depart upward and downward from that range.  Ultimately, I'll

15    determine what a reasonable sentence is for you based on the

16    sentencing factors, which are contained in a statute you can

17    find at 18 U.S.C. 3553(a), that may result in the imposition of

18    a sentence that's either greater or lesser than the advisory

19    sentencing guidelines range.

20          Do you understand all of that?

21          THE DEFENDANT:  I understand all of that, your Honor.

22    Thank you.

23          THE COURT:  Good.  Thank you.

24          Mr. Walchli, have you and your attorneys discussed how

25    these advisory sentencing guidelines might apply in your case?

N3UCwalP

1            THE DEFENDANT:  Can I quickly?

2            THE COURT:  Yes.  Please feel free to confer with your

3      counsel at any time, Mr. Walchli.

4            (Defendant and counsel conferred)

5            THE DEFENDANT:  Yes, your Honor, I was explained that.

6      Yes.

7            THE COURT:  Thank you.

8            Mr. Walchli, even if your sentence is different from

9      what your lawyer or anyone else has told you it might be, even

10     if it's different from what you expect or from what's contained

11     in a written letter agreement that you've entered into with the

12     United States, you will still be bound by your guilty plea and

13     will not be allowed to withdraw your plea of guilty.

14            Do you understand that?

15            THE DEFENDANT:  I understand that, your Honor.

16            THE COURT:  Thank you.

17            So Mr. Walchli, I've just discussed with you a number

18     of possible consequences of your plea.

19            Do you understand all of the possible consequences of

20     your plea that I've just reviewed with you?

21            THE DEFENDANT:  I understand all those possible

22     consequences, your Honor.

23            THE COURT:  Thank you.

24            So I understand there is a written plea agreement

25     entered into between you, Mr. Walchli, and your lawyer and

N3UCwalP

1    counsel for the United States.  I have the original letter plea

2    agreement, which is dated March 21, 2023, to your counsel from

3    Assistant United States Attorney Zverovich and Senior

4    Litigation Counsel Nanette Davis and trial attorney Christopher

5    Magnani.  I'm going to mark this as Court Exhibit 1 and I'm

6    going to hand it forward to the United States to retain in its

7    possession.

8              Before I hand it to the government, however,

9    Mr. Walchli, I'd like to ask you some questions about this

10   agreement if I can, please.

11             So first, did you sign the original of this plea

12   agreement on the last page?

13             THE DEFENDANT:  Yes, your Honor, I did.

14             THE COURT:  And did you do that on March 22, 2023?

15             THE DEFENDANT:  Yes, your Honor, I did.

16             THE COURT:  Thank you.

17             Did you do that in the presence of your lawyer?

18             THE DEFENDANT:  No, I was in Singapore there.  But we

19   had a call.  So we went through point by point of this

20   agreement --

21             THE COURT:  Thank you.

22             Did you read the agreement before you signed it?

23             THE DEFENDANT:  Yes, your Honor, I did.

24             THE COURT:  Thank you.

25             Did you discuss it with your lawyer before you signed

N3UCwalP

1  it?

2         THE DEFENDANT:  Yes, your Honor, I did.

3         THE COURT:  Thank you.

4         Did you fully understand the agreement before you

5  signed it?

6         THE DEFENDANT:  Yes, your Honor, I did.

7         THE COURT:  Thank you.

8         Mr. Walchli, one of the features of your agreement

9  with the government is that you've agreed on the advisory

10  sentencing guidelines range that applies in your case.  You

11  should know, Mr. Walchli, that agreement is binding on you and

12  it's binding on the government, but it's not binding on me.  As

13  I told you earlier, I have my own obligation to determine what

14  the correct advisory guideline range is and then the

15  appropriate sentence in your case.  I'm not saying that I will

16  come up with any range that's different from what you've

17  provided for with the government in your letter.  At this

18  point, I just don't know.  What's important for you to

19  understand, however, is that if I do come up with a range

20  that's higher than the one that you've agreed to with the

21  government, I will not let you withdraw your plea.

22         Do you understand that?

23         THE DEFENDANT:  I understand that, your Honor.

24         THE COURT:  Thank you.

25         Do you understand that under some circumstances,

N3UCwalP

Mr. Walchli, you or the government may have the right to appeal
any sentence that I impose?

        THE DEFENDANT:  Yes, your Honor, I do.

        THE COURT:  Thank you.

        Now, in your plea agreement, Mr. Walchli, you have
agreed to waive a number of rights to appeal or otherwise
challenge your conviction or sentence.  You've agreed not to
file a direct appeal or to bring a collateral challenge,
including but not limited to an application under Title 28,
United States Code, Section 2255 or 2241 of any sentence within
or below the stipulated guidelines range of 24 to 30 months'
imprisonment.

        Furthermore, you've agreed not to appeal or bring a
collateral challenge to any term of supervised release that is
less than or equal to the statutory maximum.

        You further agreed not to appeal or bring a collateral
challenge to any fine that is less than or equal to $95,000.
And you've also agreed not to appeal or bring a collateral
challenge to any special assessment that is less than or equal
to $100.

        Furthermore, you've waived any right to attack your
conviction and sentence on direct appeal or collaterally on the
ground that the United States has failed to produce any
discovery material, other than information establishing your
factual innocence, including Jencks Act material, material

N3UCwalP

1    pursuant to *Brady v. Maryland*, and impeachment material

2    pursuant to *Giglio v. United States* that has not already been

3    produced as of the date of signing of the agreement.

4            Furthermore, you have agreed not to challenge your

5    conviction and sentence on direct appeal or collaterally on the

6    basis of any actual or perceived adverse immigration

7    consequences, including removal or denaturalization resulting

8    from your guilty plea and conviction.

9            Mr. Walchli, do you understand the rights to appeal or

10   otherwise challenge your conviction and sentence that you have

11   waived in your plea agreement?

12           THE DEFENDANT:  I understand, your Honor.

13           THE COURT:  Thank you.

14           And are you willing to waive those rights?

15           THE DEFENDANT:  I am willing to waive those rights,

16   your Honor.

17           THE COURT:  Thank you.

18           Mr. Walchli, does this written plea agreement

19   constitute your complete and total understanding of the entire

20   agreement between you and the United States?

21           I'm sorry.  Counsel.

22           MR. TEMKIN:  Your Honor, in discussions with the

23   government, we have several understandings that are incremental

24   to the plea agreement.

25           The first is that the government has agreed that

N3UCwalP

1    Mr. Walchli may remain on bail pending sentencing.

2            The second is that in the event your Honor imposes a

3    prison sentence, Mr. Walchli may remain on bail pending

4    surrender and that we will address with your Honor whether he

5    must remain in the United States during that period.

6            The third agreement or understanding that we have is

7    that if a period of incarceration is imposed, we intend to ask

8    your Honor to recommend to the Bureau of Prisons that

9    Mr. Walchli be permitted to serve that sentence in a minimum

10   security facility, a prison camp.  And in order to facilitate

11   that, given Mr. Walchli's immigration status, we will also be

12   asking that your Honor permit Mr. Walchli to self-deport at the

13   end of any prison sentence.

14           The government has agreed to take no position with

15   respect to our request, our recommendation request, and to

16   facilitate or help facilitate whatever recommendation your

17   Honor does, in fact, make.

18           THE COURT:  Thank you very much.  Good.

19           Let me hear from counsel for the United States.  My

20   understanding is that there are three understandings that the

21   parties have reached, which have just been laid out.  I

22   understand that the parties have reached those understandings

23   between each other unknowing that none of them are binding on

24   the Court or the Court's determinations, but that the defendant

25   expects to take certain positions regarding sentencing and the

N3UCwalP

1    defendant's release conditions following sentencing, as well as

2    the location of his designation and self-deportation options in

3    the event that he is incarcerated.

4            Counsel for the United States, can you comment, are

5    the understandings that counsel for defendant just laid out

6    accurate?

7            MS. ZVEROVICH:  They are, your Honor.

8            THE COURT:  Thank you.  Good.  I appreciate that.

9            I understand that your position, counsel for the

10    United States, as counsel for defendant laid out, is that

11    you're not planning to take a position regarding those

12    applications by the defense should they be made?

13            MS. ZVEROVICH:  Your Honor, with respect to the bail

14    issue, the government agrees to recommend to your Honor that

15    the bail conditions remain unchanged pending Mr. Walchli's

16    sentencing.  Once Mr. Walchli is sentenced, the parties have

17    agreed that he can remain on bail pending his designation.

18    However, the government expects that its position will be that

19    Mr. Walchli should remain in the United States pending

20    designation, but we have agreed to take up that issue with your

21    Honor at that time at sentencing.

22            THE COURT:  Thank you.  Good.

23            I'll talk a little bit about this at the end, but

24    thank you, counsel for defendant, for raising those

25    understandings between the government and the defense.  And

N3UCwalP

thank you, counsel for the United States, to confirm for your

confirmation that defendant's statements regarding their scope

are accurate.

I understand that both parties know that none of those

agreements are binding on the Court; is that right, counsel for

defendant?

MR. TEMKIN:  Yes, your Honor.

THE COURT:  Thank you.

Counsel for the United States; is that correct?

MS. ZVEROVICH:  Yes, absolutely, your Honor.

THE COURT:  Thank you very much.

Thank you, counsel, for raising that question.

Mr. Walchli, let me come back to you.

My question previously was whether this written plea

agreement constitutes your complete and total understanding of

the entire agreement between you and the government.  I'm going

to caveat that question by asking if this agreement, together

with the oral understandings just outlined by your counsel and

confirmed by the United States, represent your complete and

total understanding of the entire agreement between you and the

government?

THE DEFENDANT:  Yes, it does, your Honor.

THE COURT:  Has anything been left out of the

agreement or the brief oral recitation of the scope of your

counsel's agreement with the United States?  Has anything been

N3UCwalP

 1    left out?

 2            THE DEFENDANT:  No, there's nothing left out, your

 3    Honor.

 4            THE COURT:  Thank you.

 5            So Mr. Walchli, other than what is written in this

 6    agreement and what has just been outlined here on the record

 7    with respect to the understanding between your counsel and the

 8    government, has anyone made any promise to you or offered you

 9    any inducement to plead guilty or to sign this agreement?

10            THE DEFENDANT:  No, your Honor, nobody.

11            THE COURT:  Thank you.

12            Has anyone threatened you or forced you to plead

13    guilty or to sign the plea agreement?

14            THE DEFENDANT:  No, your Honor, nobody has.

15            THE COURT:  Has anyone made a promise to you as to

16    what your sentence will be?

17            THE DEFENDANT:  No, your Honor, nobody.

18            THE COURT:  Thank you.

19            So Mr. Walchli, I told you earlier that there would

20    come a time in today's proceeding when I would turn to you to

21    ask you to tell me what it is you did that makes you believe

22    that you're guilty of this offense — now is that time.

23            Would you please tell me what it is that you did that

24    makes you believe that you are guilty of this offense.

25            THE DEFENDANT:  Thank you, your Honor.

N3UCwalP

1          Between 2004 and '21, I was an employee at IHAG

2     Holding AG, a holding company based in Zürich, Switzerland.

3          During 2008 and 9, among other things, I was

4     responsible for developing a Singapore asset manager as part of

5     IHAG Holding's strategy to build its presence in the Asia

6     financial services market.

7          One of IHAG Holding subsidiaries was Privatbank IHAG

8     Zürich AG.  Prior to January 2009, Privatbank IHAG decided to

9     require its U.S. clients either to disclose their accounts to

10     the U.S. tax authorities or close those accounts.

11          Starting in January 2009, I worked with executives of

12     Privatbank IHAG and others in connection with the development

13     and implementation of a solution for account holders who wanted

14     to maintain undisclosed accounts in violation of the bank's new

15     policy.

16          At the time I worked with others, I understood that

17     two of the clients who were taking advantage of the solution

18     that we were developing were U.S. citizens.  While I did not

19     know those clients nor talk with those account holders, I

20     further understood they were using the transaction to conceal

21     their accounts from the U.S. authorities in violation of U.S.

22     law.  At the time I engaged in this conduct, I understood that

23     it was wrong and a violation of U.S. law.

24          I now understand that at least one of the U.S.

25     taxpayers who took advantage of the transactions lived in the

N3UCwalP

1    Southern District of New York.

2              In 2011, I directed others to close those accounts.  I

3    have since learned that at least one of the U.S. clients

4    continued to hold an account at Privatbank IHAG into 2013.

5              THE COURT:  Thank you very much.

6              Let me turn to counsel for defendant.

7              Counsel, do you know of any valid defense that would

8    prevail at trial or do you know of any other reason why your

9    client should not be permitted to plead guilty?

10             MR. TEMKIN:  Your Honor, the answer is no to both.

11   Your Honor will recall that, pretrial, we had moved and

12   preserved the issue of the validity of the client doctrine.

13   Given the clarity of the Second Circuit's decision in the

14   *Copeland* case, I do not believe that under current law of the

15   circuit a defense based on Klein could prevail at trial.

16             Additionally, we also moved with respect to the issue

17   of the statute of limitations.  We've talked extensively and

18   explored extensively a defense based on the statute of

19   limitations and do not believe that we could establish that

20   Mr. Walchli withdrew from the conspiracy prior to September 15

21   of 2011, which is the date that, based on the pretrial motions,

22   that would be the operative date.

23             So the answer, your Honor, is I do not believe there

24   are any defenses that would prevail at trial.

25             THE COURT:  Thank you very much.  Thank you for a

1    careful consideration of those issues.

2            Counsel for the United States, are there any

3    additional questions that you'd like me to ask the defendant?

4            MS. ZVEROVICH:  No, your Honor.

5            THE COURT:  Thank you.

6            Counsel for the government, could I ask you to please

7    summarize what the government's evidence would be against the

8    defendant if you were to proceed to trial.  I'm not so

9    interested as much interested in the categories of evidence

10   that you'd be presenting, but what it is that you would be

11   showing to satisfy your burden of proving the elements of the

12   offense here.

13           MS. ZVEROVICH:  Yes.  Thank you, your Honor.

14           Your Honor, at trial, the government would prove

15   beyond a reasonable doubt that from approximately 2009 to

16   approximately 2014, Mr. Walchli conspired with other people to

17   defraud the United States in connection with a scheme to help

18   wealthy American clients conceal more than $60 million in

19   income and assets held in undeclared offshore accounts at a

20   Swiss bank called Privatbank IHAG Zürich AG and helped those

21   clients evade U.S. income taxes.  The government would show

22   that during the period of the conspiracy, Mr. Walchli was a

23   member of the executive board of a Swiss holding company named

24   IHAG Holding that owned the bank IHAG among other entities.

25           The government would prove that in order to assist the

N3UCwalP

U.S. clients, Mr. Walchli and his coconspirators devised and
implemented a scheme called the Singapore Solution to
fraudulently conceal the bank accounts of the U.S. clients,
their assets, and their income from U.S. tax authorities.

In furtherance of the fraudulent scheme, the
government would show that Mr. Walchli and his coconspirators
agreed to transfer more than $60 million from the undeclared
IHAG bank accounts of the U.S. clients through a series of
nominee accounts in Hong Kong and other locations before
returning the funds to newly opened accounts back at IHAG in
the name of a Singapore based asset management firm, and the
government would show Mr. Walchli helped establish that
Singapore-based asset manager firm.

The effect of those round trips of the client funds
was to strip their accounts of all indicia of U.S. ownership
and the U.S. government would show that the U.S. clients paid
large fees to IHAG and to others to help them conceal their
assets and evade U.S. income taxes.

The government would show that Mr. Walchli joined and
participated in the conspiracy knowingly and willfully with
others and that he and other coconspirators committed numerous
overt acts in furtherance of the conspiracy.  And some of those
overt acts included emailing each other to discuss the design
and implementation of the Singapore Solution, meeting with each
other and with U.S. clients to discuss the scheme, creating

1    nominee entities and opening nominee bank accounts to use in

2    the scheme, and wiring funds through numerous financial

3    accounts, including via wire transfers that passed through

4    corresponding banks in the S.D.N.Y.

5        The government would prove venue in the S.D.N.Y. by

6    introducing evidence that certain wire transfers again passed

7    through correspondent banks here as well as evidence that at

8    least one of the U.S. clients who took advantage of the scheme

9    lived and took actions in furtherance of the scheme in the

10   S.D.N.Y.

11       At trial, the government's evidence would include,

12   among other things, business records and bank records,

13   including records showing the fraudulent transfers of the

14   client funds, email communications among Mr. Walchli and his

15   coconspirators discussing the design and implementation of the

16   Singapore Solution, IRS records, as well as witness testimony.

17       THE COURT:  Thank you, counsel.  Good.

18       So, counsel, I'd like to turn to each side here.

19       Counsel, do all of you agree that there's a sufficient

20   factual predicate for a guilty plea?

21       Counsel for the United States.

22       MS. ZVEROVICH:  Yes, your Honor.

23       THE COURT:  Thank you.

24       Counsel for defendant.

25       MR. TEMKIN:  Yes, your Honor.

N3UCwalP

```
1                THE COURT:  Thank you.

2                Do any of you know of any reason that I should not

3      accept the defendant's plea of guilty?

4                MS. ZVEROVICH:  No, your Honor.

5                MR. TEMKIN:  No, your Honor.

6                THE COURT:  Thank you.

7                Mr. Walchli, can I ask you to please stand.  Thank

8      you.

9                Mr. Walchli, Count One of the indictment charges that

10     from at least in or about 2008 through at least in or about

11     2014, you, together with others known and unknown, conspired to

12     defraud the United States, in violation of Title 18, United

13     States Code, Section 371.

14               How do you plead to this count?

15               THE DEFENDANT:  Can I --

16               THE COURT:  Yes.  Please take your time.

17               (Defendant and counsel conferred)

18               THE DEFENDANT:  I plead guilty.

19               THE COURT:  Thank you.

20               There is no forfeiture allegation in the indictment.

21               So it is the finding of the Court in this case that

22     the defendant is fully competent and capable of entering an

23     informed plea, that the defendant is aware of the nature of the

24     charge and the consequences of the plea, and that the plea of

25     guilty is a knowing and voluntary plea supported by an
```

N3UCwalP

1    independent basis in fact containing each of the essential

2    elements of the offense.  The plea is therefore accepted and

3    the defendant is now adjudged guilty of that offense.

4              Thank you very much, Mr. Walchli.  You can be seated.

5              Mr. Walchli, the probation department will want to

6    interview you in connection with the presentence report that it

7    will prepare as I was describing it earlier.

8              Counsel for defendant, do you wish to be present for

9    any interview in connection with that report?

10              MR. TEMKIN:  Yes, your Honor.

11              THE COURT:  Thank you.

12              Counsel for the United States, please provide the

13    probation office with the government's factual statement within

14    seven days.  Counsel for defendant, please arrange for

15    Mr. Walchli to be interviewed by the probation department

16    within the next 14 days.

17              Now, Mr. Walchli, if you choose to speak to the

18    probation department, I just ask that anything that you may

19    choose to say be truthful and accurate.  This report is very

20    important for me in deciding what the appropriate sentence is

21    to impose in your case, I'm going to read it very carefully.

22    I'm lingering on this point now because you and your counsel

23    have the right to review that report and to comment on it to

24    the probation officer who's writing the report, and also to me

25    at the time of sentencing.  So I just want to urge you to take

1  advantage of that right to review the report, to let your

2  counsel know if you have any concerns about it so that he can

3  let the probation officer know of those problems and so that

4  they can raise any problems with me at or before sentencing.

5           So I'm going to set a sentencing date now.

6           Ms. Joseph, can I ask you to please schedule a date.

7           THE DEPUTY CLERK:  July 13th, 2023, at 10:00 a.m.

8           MR. TEMKIN:  Your Honor.

9           THE COURT:  Yes.

10          MR. TEMKIN:  Your Honor, we had previously spoken with

11  the government and had requested or are requesting that your

12  Honor adjourn the sentence until April of 2024 for matters,

13  personal matters that I think -- happy to discuss with your

14  Honor.

15          THE COURT:  Thank you.

16          That's a substantial deviation from what I'll describe

17  as the norm here.  So, yes, I'd want to hear more from you

18  about why that's justified and then I'll hear the government's

19  view.

20          Go ahead, counsel.

21          MR. TEMKIN:  Your Honor, I believe that this was

22  conveyed to your Honor when we submitted the plea agreement,

23  that the parties were envisioning an extended period between

24  the plea and the sentence.  I believe that this was -- at the

25  time we submitted the plea agreement to your Honor, this

N3UCwalP

1    accompanied that.

2                MS. ZVEROVICH:  Your Honor --

3                THE COURT:  I'm sorry.  Give me just a moment.

4                (Pause)

5                Thank you.

6                Counsel, I understand that there's a personal reason

7    why the defendant wishes to adjourn sentencing through early

8    April, which is a deviation, as I say, from the norm.

9                Counsel from the government, any objection to that

10   application?

11               MS. ZVEROVICH:  No, your Honor.

12               THE COURT:  Thank you.

13               So I'm happy to grant the application.  I'll set a

14   date for the proposed sentencing now.  Bear with me for just a

15   moment.

16               (Pause)

17               Ms. Joseph, could you please propose a date in April

18   2024 for sentencing here.

19               THE DEPUTY CLERK:  April 2nd, 2024 at 10:00 a.m.

20               THE COURT:  Thank you.

21               Counsel, does that date and time work for each of you?

22               MS. ZVEROVICH:  Works for the government.  Thank you,

23   your Honor.

24               THE COURT:  Thank you.

25               Counsel for defendant.

N3UCwalP

| | |
|---|---|
| 1 | MR. TEMKIN:  Yes, your Honor. |
| 2 | THE COURT:  Good.  Thank you.  Very good. |
| 3 | So let's hear about the defendant's release status. |
| 4 | First, counsel for defendant, can I hear a proffer |
| 5 | from you on risk of flight and harm to the community and other |
| 6 | persons. |
| 7 | MR. TEMKIN:  Your Honor, in light of the charges in |
| 8 | this case, I don't think there's any issue of danger to the |
| 9 | community. |
| 10 | With respect to risk of flight, Mr. Walchli |
| 11 | voluntarily came to the United States to face these charges. |
| 12 | We had an agreed upon bail package with the government.  He has |
| 13 | satisfied every condition.  He has come to court when required. |
| 14 | There's no reason to think that at this point, having |
| 15 | voluntarily decided to come and face the charges, having |
| 16 | decided to plead guilty, there's no reason to have concerns |
| 17 | that he's going to be a risk of flight at this point, your |
| 18 | Honor. |
| 19 | THE COURT:  Thank you. |
| 20 | Counsel for the United States, what's your view? |
| 21 | MS. ZVEROVICH:  Your Honor, the government agrees that |
| 22 | under the circumstances of this case, the current conditions |
| 23 | will be sufficient to satisfy the purposes of the Bail Reform |
| 24 | Act. |
| 25 | THE COURT:  Thank you.  Fine. |

N3UCwalP

1          On the basis of the proffer by counsel for defendant

2     as well as my experience with the history of this case, I

3     conclude a sufficient showing has been made that the defendant

4     is not likely to flee or pose a danger to the safety of any

5     other person or the community.  As a result, the present bond

6     conditions will be continued through the date of sentencing.

7          Mr. Walchli, do you understand that all of the

8     conditions upon which you've been released up until now

9     continue to apply and that any violation of those conditions

10    can have very serious consequences on you at the time of

11    sentencing?

12          THE DEFENDANT:  I understand that, your Honor.  Thank

13    you.

14          THE COURT:  Thank you.

15          Now, Mr. Walchli, you must be in this courtroom for

16    sentencing at the date and time that I've just established,

17    unless I change it by written order.  If you are not, you'll be

18    guilty of a separate crime, which is bail jumping, and you'll

19    be subject to a fine and/or prison sentence in addition to

20    whatever sentence you may receive for the crime to which you've

21    just pleaded guilty.

22          Do you understand that?

23          THE DEFENDANT:  I understand that, your Honor.

24          THE COURT:  Very good.  Thank you very much.

25          Counsel, is there anything else that you need to take

N3UCwalP

1    up before we adjourn this conference?  Please go ahead.

2              MR. TEMKIN:  Your Honor, in light of the sentencing

3    date and Mr. Walchli's travel plans at this point, I was hoping

4    that your Honor would allow us to meet with probation when

5    Mr. Walchli returns to the United States in probably later this

6    month or later April, early May as opposed to the 14 days your

7    Honor had set forth previously.

8              THE COURT:  That's fine.  Given the sentencing date, I

9    think that's more than reasonable.  I'll leave it to you,

10   counsel, to please coordinate with probation office.  We'll

11   request the presentence report.  Please arrange for him to be

12   interviewed let's say instead of the normal 14 days, let's call

13   it two months.

14             MR. TEMKIN:  Thank you, your Honor.

15             THE COURT:  Thank you very much.  Very good.

16             Thank you all very much.  This proceeding is

17   adjourned.

18                              *  *  *

19

20

21

22

23

24

25