```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,              New York, N.Y.

            v.                         20 CR 497 (GHW)

ROLF SCHNELLMANN,

              Defendant.

------------------------------x
                                       October 11, 2024
                                       9:00 a.m.

Before:

                  HON. GREGORY H. WOODS,

                                       District Judge


                         APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  OLGA ZVEROVICH
     NANETTE L. DAVIS
     Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant
BY:  MICHAEL ARTHUS

ALSO PRESENT:
MAGNA CZAGANY, Standby German Language Interpreter
```

1             (Case called)
2             THE DEPUTY CLERK:  Counsel, please state your
3    appearance for the record.
4             MS. DAVIS:  Good morning, your Honor.
5             Nanette Davis and Olga Zverovich from the Department
6    of Justice.
7             THE COURT:  Thank you.
8             Good morning.
9             MR. ARTHUS:  Good morning.
10            Michael Arthus for Rolf Schnellmann from the Federal
11   Defenders.
12            THE COURT:  Great.  Thank you very much.
13            Good morning.
14            Good morning.  So we're here to conduct a sentencing
15   hearing from Mr. Schnellmann.
16            First, I note that in the past Mr. Schnellmann has
17   proceeded without the need for the use of an interpreter.  We
18   have an interpreter here available to assist him, should he
19   need it.
20            Counsel, does the defendant require the services of be
21   a interpreter for these proceedings?
22            MR. ARTHUS:  No, just on standby will be fine.
23            THE COURT:  Thank you.
24            So, do you have any doubt as to whether or not the
25   defendant will be able to hear everything that is said here?

1          MR. ARTHUS:  No.

2          THE COURT:  Thank you.

3          Mr. Schnellmann, please let me know if you have any

4   difficulty hearing or understanding anything that is said here.

5   We have an interpreter who is available to you, should you need

6   that assistance.

7          Are you able to hear and understand me now?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Thank you.

10         THE DEFENDANT:  Absolutely.

11         THE COURT:  So I've received and reviewed the

12  following materials in connection with this sentencing:

13         First, the presentence report which is dated

14  September 11, 2024;

15         Second, the Defendant's sentencing memorandum, which

16  is dated September 26, 2024, together with its exhibits; and

17         Third, the government's sentencing memorandum which is

18  dated October 3, 2024.

19         Counsel, have each of the parties received all of

20  those materials?

21         MS. DAVIS:  Yes, your Honor.

22         MR. ARTHUS:  Yes, we have.

23         THE COURT:  Thank you.

24         Have each of the sentencing memoranda been filed with

25  the Clerk of Court?

1             MS. DAVIS:  Yes, your Honor.
2             MR. ARTHUS:  Yes.
3             THE COURT:  Thank you.
4             Are there any other submissions in connection with
5    this sentencing?
6             MS. DAVIS:  No, your Honor.
7             MR. ARTHUS:  No, not from us.
8             THE COURT:  Thank you.
9             Then let me turn first to counsel for defendant.
10   Counsel, have you read the presentence report?
11            MR. ARTHUS:  Yes, I have.
12            THE COURT:  Have you discussed it with your client?
13            MR. ARTHUS:  Yes.
14            THE COURT:  Thank you.
15            Mr. Schnellmann, let me turn to you.  Have you read
16   the presentence report?
17            THE DEFENDANT:  Yes.
18            THE COURT:  Have you discussed it with your counsel?
19            THE DEFENDANT:  Yes, I have.
20            THE COURT:  Have you had enough time to review the
21   presentence report?
22            THE DEFENDANT:  Yes, absolutely.
23            THE COURT:  Have you had the opportunity to discuss
24   with your counsel whether there are any errors in the
25   presentence report?

1   THE DEFENDANT:  Yes.  We corrected whatever is
2   necessary.
3   THE COURT:  Thank you.  Very good.
4   Counsel for to the United States, let me turn to you.
5   Have you read the presentence report?
6   MS. DAVIS:  We have, your Honor.
7   THE COURT:  Do you have any objections related to the
8   factual accuracy of the presentence report?
9   MS. DAVIS:  No, your Honor.
10  THE COURT:  Thank you.
11  Counsel for defendant, do you have any objections
12  related to the factual accuracy of the presentence report?
13  MR. ARTHUS:  No objections.
14  THE COURT:  Given that there are no objections to the
15  factual recitations in the presentence report, the court adopts
16  the factual recitations in the presentence report.  The
17  presentence report will be made part of the record in this
18  matter and will be placed under seal.  If an appeal is taken,
19  counsel on appeal may have access to the sealed report without
20  further application to the court.
21  Now, although district courts are no longer required
22  to follow the sentencing guidelines, we are still required to
23  consider the applicable guidelines in imposing sentence.  To do
24  so, it's necessary that we accurately calculate the advisory
25  sentencing guidelines range.

1     In this case, the defendant pleaded guilty to Count
2  One in the indictment in this case.  Count One charged him with
3  conspiracy to defraud the United States, in violation of
4  Title 18, United States Code, Section 371.
5     Counsel for the United States, does the government
6  agree a two-level adjustment here is appropriate under Section
7  3E1.1(a)?
8     MS. DAVIS:  Yes, your Honor.
9     THE COURT:  And is the government moving for an
10 additional one-level adjustment under Section 3E1.1(b)?
11    MS. DAVIS:  We do, your Honor.
12    THE COURT:  Thank you.
13    I calculate the sentencing guidelines in a manner
14 consistent with the plea agreement and the presentence report.
15 The applicable sentencing guidelines manual is the November 1,
16 2023 Sentencing Guidelines manual.
17    Pursuant to Section 2T1.9, I look to Section 2T1.4 to
18 determine the base level.  Pursuant to Section 2T1.4(a)(1) and
19 2T4.1(g), the base offense level is 18, because the agreed upon
20 tax loss is more than $250,000, but less than $550,000.
21    Because the offense involved the use of sophisticated
22 means, a two-level increase is warranted pursuant to Section
23 2T1.4(b)(2).
24    Because the conduct was intended to encourage persons
25 other than the coconspirators to violate the Internal Revenue

laws, a two-level increase is warranted pursuant to Section 2T1.9(b)(2).

Because the defendant has no criminal history and it points in the other conditions set forth in Section 4C1.1, do not apply, a two-level reduction is warranted pursuant to Section 4C1.1.

Because the defendant has demonstrated acceptance of responsibility for his offense through his plea allocution, I apply a two-level reduction pursuant to Section 3E1.1(a).

Upon motion by the United States, an additional one-level reduction is warranted pursuant to Section 3E1.1(d).

As a result, the applicable guidelines offense level is 17. The defendant has no criminal history points. As a result, the defendant is in criminal history category I. I've considered whether there is an appropriate basis for a departure from the advisory range within the guidelines system, and while I recognize that I have the authority to depart, I do not find any grounds warranting a departure under the guidelines.

In sum, I find that the offense level is 17 and that the defendant's criminal history category is I. Therefore, the guidelines range applicable to this matter is 24 to 30 months' imprisonment.

Counsel, does either party have any objections to the sentencing guidelines calculation?

1          MS. DAVIS:  No, your Honor.

2          MR. ARTHUS:  No objection.

3          THE COURT:  Thank you.

4          Counsel for defendant, do you wish to be heard with
5    respect to sentencing?

6          MR. ARTHUS:  Just very briefly.

7          THE COURT:  Thank you.

8          Please proceed.

9          MR. ARTHUS:  We are obviously all in agreement that --

10         THE COURT:  Thank you.

11         Can I ask you to pull the microphone a little closer.
12    We'll turn up the sound.  You can use your microphone.

13         MR. ARTHUS:  So, we're in agreement with the
14    government and probation that time served is the appropriate
15    sentence.  I just want to point out that Mr. Schnellmann is
16    here today.  He flew in from Switzerland earlier this week.  He
17    came here voluntarily.  He's ready to face sentencing and to
18    start putting all of this behind him.

19         He was taking instructions from his boss.  He should
20    have known better.  He should have just resigned when he was
21    told and instructed to solve the problem that they had
22    presented.  He didn't, and he's lost everything as a result of
23    that.  He made practically no profit from this Singapore
24    solution.  He earned only his salary, and he was fired as soon
25    as the bankers got what they needed out of him.

1          And for the last decade, he has done everything anyone
2    could have asked to try to make things right.  Those efforts
3    are outlined in the sentencing submissions.  I'm not going to
4    go into detail on them now, but I'm not sure we could have
5    asked anything more of him in terms of trying to make this
6    right.
7          So, he's looking forward to putting this chapter
8    behind him.  He wants to spend the latter stage of his life
9    rebuilding his reputation, being with his family, being a
10   grandfather.  He spent five months in truly terrible
11   conditions, and he's here before you today voluntarily hoping
12   he can be given the chance to start putting this behind him.
13         So, we agree that a time served sentence would be
14   appropriate.  Thank you.
15            THE COURT:  Mr. Schnellmann, let me turn to you.
16            Do you wish to make a statement to the court?
17            THE DEFENDANT:  Yes.
18            THE COURT:  Thank you.
19            THE DEFENDANT:  Your Honor, I reported myself in about
20   ten years ago and I declared myself guilty, and I did
21   everything to make up what I righted wrong.  I was cooperating
22   with the U.S. Government.  I was assisting them in whatever
23   sense I could.
24            So, I'm hoping you show the mercy and let me spend the
25   rest of my life in peace.

1      THE COURT:  Thank you, Mr. Schnellmann.
2      Counsel for the United States, does the government
3 wish to be heard with respect to sentencing?
4      MS. DAVIS:  Very briefly, your Honor.
5      I just would like to emphasize that Mr. Schnellmann,
6 his efforts as they are detailed in the sentencing memoranda,
7 were very helpful.  It was truly a team effort on the part of
8 the defendants.
9      I note that Defendant Walchli, who did not make
10 similar efforts, was sentenced to time served, which actually
11 was no time in jail.  And Mr. Schnellmann has served five
12 months in difficult conditions.  Therefore, we concur with the
13 recommendation of the probation office of the defendant's
14 request for time served.
15      THE COURT:  Thank you.
16      Counsel, is there any reason why sentence should not
17 be imposed at this time, counsel for the United States?
18      MR. ARTHUS:  No.
19      MS. DAVIS:  No, your Honor.
20      THE COURT:  Thank you.
21      Counsel?
22      MR. ARTHUS:  No.
23      THE COURT:  Thank you.
24      I will now describe the sentence that I intend to
25 impose, but counsel have a final opportunity to make legal

1  objections before the sentence is finally imposed.

2              As I've stated, the guidelines range applicable to
3  this case is 24 to 30 months' imprisonment.  I have considered
4  the guidelines range.  Under the Supreme Court's decision in
5  *Booker* and its progeny, the guidelines range is only one factor
6  that I must consider in determining the appropriate sentence.
7  I'm also required to consider the other factors set forth in
8  18, United States Code, Section 3553(a).  These include:

9              First, the nature and circumstances of the offense and
10 the history and characteristics of the defendant;

11             Second, the need for the sentence imposed to:

12             (A) reflect the seriousness of the offense, to promote
13 respect for the law, and to provide just punishment for the
14 offense;

15             (B) to afford adequate deterrence to criminal conduct;

16             (C) to protect the public from further crimes of the
17 defendant; and

18             (D) to provide the defendant with needed education or
19 vocational training, medical care, or other correctional
20 treatment in the most effective manner;

21             Third, the kinds of sentences available;

22             Fourth, the guidelines range;

23             Fifth, any pertinent policy statement;

24             Sixth, the need to avoid unwarranted sentence
25 disparities among defendants with similar records who have been

found guilty of similar conduct; and

Seventh, the need to provide restitution to any victims of the offense.

Ultimately, I am required to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing that I mentioned a moment ago.

Now, I've given substantial thought and attention to the appropriate sentence in this case. Considering all of the 3553(a) factors and the purposes of sentencing, as I've laid out, which are reflected in the statute, based on a review of all of the factors which I'm going to discuss in more detail in a moment, I intend to impose a nonguideline sentence of time served. I do not expect to impose a term of supervised release. I do not expect to impose a fine, nor do I expect to order restitution. I will impose the mandatory fee of $100.

I will discuss these issues with more specificity after I've reviewed my reasoning.

Let me just start by saying that the nature of Mr. Schnellmann's crimes were serious. Tax fraud is a very serious crime. At the sentencing of Mr. Walchli, Mr. Schnellmann's codefendant, I quoted Justice Holmes who said, "Taxes are the price we pay for a civilized society." People that evade that duty, and people like Mr. Schnellmann who facilitate their evasion, are committing a serious crime, one that undermines civic society.

1     Now, I'm not going to go into all the details of the
2  "Singapore solution" that IHAG developed to help some of their
3  Americans clients hide the money.  It's all thoroughly
4  explained in the presentence report and the parties' sentencing
5  submissions.  I just want to say a few words to put
6  Mr. Schnellmann's participation in the scheme in context.
7     At the time of his participation of the offense,
8  Mr. Schnellmann was acting by contract as the CEO of Allied
9  Finance.  Although his title was CEO, I understand that he was
10 subject to the instruction of the company's owner.
11 Mr. Schnellmann was hired to develop a white money strategy,
12 unfortunately, who also became involved in the development and
13 implementation of the Singapore strategy.  Mr. Schnellmann's
14 role in that project was significant.  He helped to develop the
15 strategy, he acted as a director of some of the nominee
16 entities involved in the scheme, and controlled some of the
17 accounts through which funds were transferred.
18    At the same time, from my perspective, his role was
19 substantially less substantial than others.  He did not solicit
20 clients for participation in the strategy.  He received no
21 remuneration for his efforts, other than his salary.  And he
22 participated in the scheme at the direction of his superior.
23    So, this was a serious crime and Mr. Schnellmann
24 committed it, but I understand that Mr. Schnellmann was one of
25 the less culpable people involved in the scheme.  I do not

believe that he was as culpable as a number of his other codefendants or, perhaps, others who were not charged and were not as culpable as the taxpayers who have the benefit of an amnesty.

Mr. Schnellmann was born in July 1962 in Stein am, Switzerland. He is 62 years old today. He was raised by both of his parents in a loving home together with his three brothers. Mr. Schnellmann has been married to his wife since 1989. The couple have two children and three grandchildren. I have read the letters from Mr. Schnellmann's family and his friends, and I know from them that Mr. Schnellmann has been a devoted husband and father to his children, son to his parents, and important support to his mother, especially following the death of his father. All of that family support is for the good and weighs heavily in favor of a downward variance here.

Mr. Schnellmann suffers from health issues. He has diabetes and high blood pressure, and recently had to go to surgery in one eye following his incarceration here in the United States at the MDC.

Mr. Schnellmann has a master's degree in international taxation. He served honorably in the Swiss Air Force. He has a lengthy history of legitimate employment. From the time that he completed his education, he worked at Arthur Andersen, and at a time that it was a reputable firm in Switzerland, before starting his own tax and consulting company. He continued that

1   business while doing the work as a contract CEO of Allied that
2   led to his participation in this offense.  He then worked at
3   another financial company until, as I understand, that he was
4   arrested and ultimately convicted in Switzerland for the
5   commission of another crime.
6          Mr. Schnellmann does have another conviction in
7   Switzerland.  He served approximately two years as a result of
8   that offense.  Given the way that the rules work, that does not
9   yield criminal history points.
10         I have considered what is a just punishment in this
11  case.  I'm also required to consider the deterrent effect both
12  on Mr. Schnellmann personally and also the need to accomplish
13  the goal of what we call general deterrence.  In other words,
14  the need to try to keep other people from engaging in this kind
15  of offense.
16         So, first off, I believe that this sentence is just,
17  particularly given Mr. Schnellmann's period of incarceration
18  and the conditions of it.  I think that the need for personal
19  deterrence here is very low.  I think that for a number of
20  reasons:
21         First, Mr. Schnellmann committed this offense well
22  over a decade ago;
23         Second, and most substantially, Mr. Schnellmann has
24  conducted himself in a way that clearly demonstrates his
25  acceptance of responsibility and, more importantly, his desire

1   to and active steps to redeem himself.  He took a number of
2   very concrete steps to proactively provide information about
3   these offenses to the conduct as a whistleblower before he even
4   knew that he was a target of this investigation.
5   Mr. Schnellmann undertook those actions on his own initiative
6   and, from my perspective, is a very strong signal of his
7   genuine remorse;
8              Third, Mr. Schnellmann has served a meaningful amount
9   of time in prison conditions that he has described as medieval.
10  His proactive engagement with the government did not spare his
11  arrest and detention in Italy for the MDC.  And I expect that
12  that experience will motivate him to avoid further criminal
13  activity.
14             I have weighed the need for general deterrence in this
15  case.  While it is a serious consideration, I do not believe
16  that it requires a greater sentence here.  Again,
17  Mr. Schnellmann has already faced serious collateral
18  consequences as a result of his offense.  He has served
19  substantial time in prisons that are not high repute, and an
20  extended period of time has passed since the date of his
21  conduct and today.  They say that the certainty of consequences
22  is as important as the nature of the consequences.  I don't
23  believe that a greater sentence is necessary in order to
24  accomplish the goal of general deterrence in this case.
25             I've considered Mr. Schnellmann's ability to use any

1    period of incarceration for educational or vocational training,
2    medical care, or other correctional treatment in the most
3    effective manner.  Given the defendant's education, job
4    history, and health, I think that this factor, frankly, weighs
5    heavily against an incarceratory sentence.  His eye surgery
6    just tells us that to the contrary of health and an additional
7    term of incarceration would be counterproductive.
8             I've considered the kinds of sentences available.  I
9    do not believe that a term of imprisonment is appropriate in
10   this case.  I've given serious consideration to the guidelines
11   and the policy statements.  I believe that a nonguideline
12   sentence is appropriate in this case based on my assessment of
13   all of the 3553(a) factors and the purposes of sentencing as
14   set forth in the statute, given the circumstances of the case,
15   and my decision is based on an assessment of all of those
16   factors.
17            But I would like to highlight the principal reasons
18   for my downward variance here:
19            First, I believe that the likelihood of recidivism is
20   very low;
21            Second, I think that a downward variance is
22   appropriate to avoid unwarranted sentencing disparities; and
23            Third, I believe that a downward variance is
24   appropriate here given Mr. Schnellmann's acceptance of
25   responsibility in this case in what the government describes as

1   helpful assistance in the case, all of which lead me to believe

2   that a substantial downward variance is appropriate. I've

3   considered the need to avoid unwarranted sentence disparities.

4   Having considered all of the sentencing factors, I

5   believe that this sentence is appropriate for him. This factor

6   weighs heavily in my decision. As I've described previously,

7   two of the U.S. taxpayers involved in this scheme received

8   amnesty from the government and have not suffered consequences,

9   other than the need to pay the tax losses with penalties and

10  interest. The other U.S. taxpayer received a nonincarceratory

11  sentence.

12  Because Mr. Schnellmann was arrested in Italy and

13  extradited to the United States, notwithstanding his work with

14  the government he, unlike his codefendants, has faced a

15  meaningful time in jail as a result of this crime. A greater

16  sentence would lead to unwarranted sentence disparities.

17  I have considered the need to provide restitution to

18  any victims of the offense. This is not a factor in this case

19  because the U.S. taxpayers have already satisfied the

20  government's tax loss.

21  With that, Mr. Schnellmann, can I ask you to please

22  rise for the imposition of sentence.

23  Thank you.

24  It is the judgment of this court, Mr. Schnellmann,

25  that you be sentenced to time served. Following the guidance

of Section 5D1.1(c), I am not imposing a term of supervised release. I am not imposing a fine because the probation department reports that you are unable to pay one. The defendant must pay to the United States a total special assessment of $100, which shall be due immediately.

Counsel for the United States, I understand that the government is not seeking forfeiture or restitution in this matter, is that correct?

MS. DAVIS:  That is, your Honor.

THE COURT:  Thank you.

Counsel, do either of you or any of you know of any legal reason why this sentence shall not be imposed as stated?

MS. DAVIS:  No, your Honor.

MR. ARTHUS:  No.

THE COURT:  Thank you.

The sentence as stated is imposed. I find that sentence is be sufficient but not greater than necessary to comply with the purposes of sentencing set forth in 18, United States Code, Section 3553(a)(2).

Mr. Schnellmann, you have the right to appeal your conviction and sentence, except to whatever extent you may have validity waived that right as a part of your plea agreement. The notice of appeal must be filed within 14 days of the judgment of conviction. If you're not able to pay the costs of an appeal, you may apply for leave to appeal *in forma pauperis*.

1  If you request, the Clerk of Court will prepare and file a
2  notice of appeal on your behalf.
3              Counsel, are there any other applications at this
4  time?
5              Counsel first for the government?
6              MS. DAVIS:  No, your Honor.
7              THE COURT:  Thank you.
8              Counsel?
9              MR. ARTHUS:  Just one, very briefly.
10             THE COURT:  Please.
11             MR. ARTHUS:  I have notified CBP about his itinerary
12 to fly back out today.  I don't anticipate there being any
13 problems, but to the extent that the court could update the
14 docket today to reflect a time served sentence, that would
15 probably evade any doubt on CBP's part about his ability to
16 leave.
17             THE COURT:  Thank you.
18             We'll work to get a judgment posted during the course
19 of the day this morning.
20             Very good.  So, thank you all very much.
21             Thank you, Mr. Schnellmann.  This proceeding is
22 adjourned.
23                            *   *   *
24
25